```
          IN THE UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF ARKANSAS
                   EL DORADO DIVISION
```

**BRADLEY TIMBERLAND RESOURCES, LLC**                                **PLAINTIFF**

   **v.**                   **Case No. 1:11-CV-1057**

**BRADLEY LUMBER COMPANY and**
**WEBSTER BUSINESS CREDIT CORP.**                                    **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Bradley Timberland Resources, LLC's ("BTR") Motion to Reconsider (Doc. 18) pursuant to Fed. R. Civ. P. 59(e). The Motion (Doc. 18) is **DENIED**.

Previously, in its Order of February 6, 2012 (Doc. 16), the Court found that Defendant Bradley Lumber Company ("BLC") had been fraudulently joined by BTR in this matter in order to defeat diversity and divest the Court of jurisdiction. The Court found that BTR's claims against the remaining Defendant, Webster Business Credit Corp. ("Webster"), should be dismissed due to the fact that the limitations period on BTR's claims for fraud and tortious interference had run.

BTR now contends that the Court erred in finding that the claims for fraud and tortious interference accrued in the fall of 2007, more than three years before BTR filed its Complaint. BTR's position is incongruous, considering the fact that it stated multiple times in its Complaint that Webster's termination of BLC's financing, which constitutes the basis for BTR's fraud and tortious

interference claims, occurred in the fall of 2007.[1]  Yet, in its Motion for Reconsideration, BTR now disputes that the alleged harm began in the fall of 2007 and maintains instead that BLC was not put on notice as to Webster's allegedly false representations until August 13, 2008, when Webster's counsel stated in a letter to BLC that the loan was officially terminated.

The Court finds that the continuance of the lending relationship, evidenced by certain wire transfers in 2008 from Webster to BLC, does not negate the fact that BLC was put on notice that it had defaulted on its loan with Webster and that Webster was in the process of ceasing funding of the loan as early as the fall of 2007.  The evidence is ample, particularly in the companion case of *Webster Business Credit Corp. v. Bradley Lumber Company, et al., 1:08-CV-01083*, that the decision to curtail and eventually end financing of the Webster/BLC loan occurred in and around the fall of 2007, when Webster began terminating BLC's inventory and accounts receivable financing.  Therefore, as BTR itself averred in its Complaint, BLC became aware of Webster's decision to curtail

---

[1]  *See* Complaint, Doc. 6 at para. 19: "Starting in the Fall (late August or early September) of 2007 Webster made several false representations."  *See also id.* at para. 11, emphasis added: "In the Fall (late August or early September) of 2007 Webster contacted Bradley Lumber and required Bradley Lumber obtain a letter of credit from the financial institution that financed a customer by the name of Sound Industries, a purchaser of large amount of Bradley Lumber product.  *Webster demanded these measures* from Bradley Lumber *in order to reopen Bradley Lumber's inventory and accounts receivable financing.*"

funding for the loan earlier than the date in which official correspondence confirmed that the loan was terminated.

Moreover, as the Court explained in its Order dismissing BTR's claims, because the owner and principal of BLC and BTR were the same person, BTR had the same knowledge as BLC as to the facts surrounding the Webster loan.  Further, BTR and BLC were not two separately managed and funded entities with no knowledge of one another's business decisions; instead, they were closely held companies owned by the same individual who decided to use the assets of one company (BTR) as collateral to secure a loan for the other company (BLC).  Surprisingly, BTR continues to maintain in its Motion for Reconsideration that it "was a victim of misconduct at the hands of both Webster and BLC," which defies logic, facts, and the reasoned decision of the Court in its Order.  *See* Doc. 18, p. 6.

Accordingly, the Court determines the findings contained in the Order of February 6, 2012 (Doc. 16) to be correct, and Plaintiff's Motion for Reconsideration (Doc. 18) is **DENIED.**

**IT IS SO ORDERED** this 14th day of March, 2012.

                                                       /s/ Robert T. Dawson  
                                                   Honorable Robert T. Dawson  
                                                   United States District Judge